NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0818n.06

Case Nos. 13-4236/4237

FILED
Oct 29, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| B. ELISE MILLER, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and DONALD, Circuit Judges.

**SILER**, Circuit Judge. This is a search warrant case. A specialty pharmacy in Ohio was committing health care fraud. To obtain incriminating files, agents searched the pharmacy and later the business owner's home. The district court denied the owner's motions to suppress the fruits of these two searches, and this appeal followed. We **AFFIRM**.

**I.**

B. Elise Miller owned and operated Pharmaceutical Alternatives, Inc., which did business as Three Rivers Infusion and Pharmacy Specialists ("Three Rivers"), a "specialty pharmacy." In addition to providing home health services and pharmaceutical supplies, Three Rivers offered expensive drugs not typically carried by retail pharmacies. Among the specialty drugs available

at Three Rivers was "Synagis," a drug for infants with respiratory disease. In May 2008, special agents with the Federal Bureau of Investigation ("FBI") and the United States Department of Health and Human Services ("DHHS") joined an ongoing investigation by the state of Ohio involving allegations that Three Rivers was over-billing various private and government health insurance providers, including Medicaid, for its services and drugs, particularly its dispensing of Synagis.

Pursuant to the investigation, special agent Benjamin Unkefer of the DHHS authored an affidavit in support of a warrant for the search of Miller's business premises, which consisted of Three Rivers, located at 238 Main Street in Coshocton, Ohio, and a retail pharmacy she operated known as Miller Pharmacy, located in an adjacent building at 234 Main Street. Unkefer's affidavit described several examples of fraudulent billing involving Synagis. Investigators deduced that these billings were fraudulent by comparing patient records to claims for reimbursement submitted by Three Rivers. The affidavit also identified the buildings to be searched and described each building as a two-story structure.

The magistrate judge found probable cause and authorized a warrant to seize numerous records. The warrant had an attachment that included a list of specific patient files, most of which involved Synagis. Agents conducted the search in August 2008 and seized several of the listed files. But many of the listed patient files were missing.

In December 2008, investigators made another attempt to recover the missing patient files by serving an administrative health care subpoena on Three Rivers. Three Rivers turned over the records of 21 additional patients, but ninety of the subpoenaed files were missing.

In early December 2009, Miller's housekeeper, Mary Richard, told FBI special agent Quentin Holmes that she had gone to an attic storage area of Miller's house to look for a

Christmas tree. There, she found a garbage bag containing what appeared to be patient files from Three Rivers. A few days later, Holmes asked Richard to look in the bag again and tell him some of the patient names that were visible on the file folders. Richard complied. Agents compared those names to the names on the administrative subpoena and found that some of them matched.

Agents then applied for a warrant to search Miller's residence. Holmes authored the supporting affidavit. The affidavit contained information from three former Three Rivers employees, in which the former employees described a box of Synagis files that agents left behind in a conference room after the August 2008 search. Two of these employees noticed that the box later vanished from the pharmacy, and one of them said the box ended up at Miller's house. One paragraph of the affidavit also recounted Richard's discovery of the box of files in Miller's attic, but it did not mention Richard's subsequent trip to collect names from the files.

Based on Holmes's affidavit, the magistrate judge issued a warrant to search Miller's residence. There, agents found the files just as Richard had described them.

Miller and her co-defendants moved to suppress the evidence seized in these two searches. The district court denied the motions after a hearing. In this appeal, Miller proffers two arguments that were not contained in her motions to dismiss, but that emerged from the testimony gathered at the suppression hearing.

Regarding the search of the pharmacies, Miller suggested at the hearing that when the agents were searching the second floor of 238 Main Street, they crossed into an adjoining building, with the street address of 240 and 240½ Main Street. Unkefer, the agent who led the search, testified that, although the buildings seemed bigger than he expected on the inside, he was not aware of ever having penetrated into an adjoining building. He said his agents entered

the building only through the doors of the 234 and 238 Main Street addresses, and that their search was limited to areas open to and accessible from those entryways. Unkefer said he had no idea it was possible to enter the adjoining building through the second floor.

Regarding the search of her residence, Miller's motion claimed that Holmes provided false testimony in his affidavit in support of the warrant. This claim subsequently morphed into an argument that Miller's housekeeper was acting as a government agent when she collected the names from the files in the attic, and that this unreasonable search invalidated the warrant.

## II.

When we review a district court's decision on a motion to suppress, we review findings of fact for clear error and conclusions of law de novo. *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012). When a district court has denied a motion to suppress, we review the evidence "in the light most likely to support the district court's decision." *United States v. Pritchett*, 749 F.3d 417, 435 (6th Cir. 2014) (quoting *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009)).

## III.

We turn first to whether the search warrant for Miller's residence was invalid. Miller argues on appeal that her housekeeper was acting as an agent of the government when she found the files in Miller's attic, which renders the discovery an unreasonable government search in violation of the Fourth Amendment. If we redact the housekeeper's information from the affidavit supporting the warrant, Miller argues, then the affidavit fails to provide probable cause to search her house.

We have no need to address this argument because Miller did not properly present it to the district court. Miller failed to raise this argument in her motions to suppress or their supporting memoranda. Miller waived closing arguments at the suppression hearing, so the legal argument was never developed there. Miller's husband, her codefendant, submitted a post-hearing "addendum" to his motion to suppress on December 5, 2012, which contained this agency theory. But the district court declined to consider the addendum, and its twelve-page order (dated December 7, 2012, and filed December 10) nowhere addresses Miller's late-blooming government agency argument. We deem it waived.

## IV.

Miller also attacks the search of her two adjacent pharmacy businesses. She alleges that the agents executing the warrant—which was issued for 234 and 238 Main Street—also entered the adjoining building, 240 and 240½ Main Street, and therefore exceeded the scope of the authorized search. All three buildings are what the district court described as "contiguous."

To determine whether a warrant describes with sufficient particularity the place to be searched, courts must consider "(1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005) (quoting *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1999)). If agents exceed the scope of a valid warrant, we will only exclude the seized evidence if the unauthorized portion of the search was done in bad faith. *See United States v. Leon*, 468 U.S. 897, 919-22 (1984) (describing the "good faith" exception to the Fourth Amendment exclusionary rule). When government agents act with an "objectively reasonable good-faith belief," or where their actions involve only simple

"isolated" negligence, exclusion of the evidence is not warranted. *Davis v. United States*, 131 S. Ct. 2419, 2427-28 (2011) (internal quotation marks omitted).

The district court made three explicit rulings on this argument. First, the court found that the search warrant was constitutionally valid to the extent that it described with particularity the place to be searched. Miller does not challenge this finding. The district court also considered the witness testimony and found it "far from certain" that a third building was searched at all. Even if a third building had been searched, the district court found that the agents acted in good faith because they had an objectively reasonable belief that they remained at all times in the locations delineated by the warrant.

At the suppression hearing, special agent Unkefer, who led the search of the businesses, reviewed a diagram of the search locations that was drawn by another agent for the benefit of the search team. Unkefer agreed with defense counsel that it was possible that the notation on one page of the drawing stating "stairs to the third floor" may have been a reference to stairs in the adjoining building, 240 and 240½ Main Street. But, as Unkefer noted, the same page of the diagram also labeled the search area as "Three Rivers: 238 Main St., Coshocton, OH, 2nd Floor (East side of 3-Rivers)."

Unkefer further testified that the search team entered the search locations only through the front doors at 234 and 238 Main Street, not through the door of either 240 or 240½ Main Street. He explained that, with respect to the second floor of Three Rivers, agents "moved . . . fluidly through the building from one room to the other" and that no walls or other barriers obstructed their access. Agents did not knock holes in any walls to access the space they searched, nor did they remove any locks to do so. To the contrary, as Unkefer reiterated, the agents were "not aware that we were moving to another address outside of 234 or 238 Main

Street during any time during the [execution of the] warrant." The district court accredited this testimony.

It was by no means clear error for the district court to conclude that Miller did not meet her burden of showing that agents entered the adjoining building. Nothing in the record leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. Pritchett*, 749 F.3d 417, 435-36 (6th Cir. 2014) (quoting *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)).

We also agree with the district court's legal conclusion that, even if the agents' search of the business premises violated the Fourth Amendment's particularity requirement, any evidence seized in violation of the warrant would remain admissible under the good-faith exception to the warrant requirement. *See Leon*, 468 U.S. at 919-22. The uncontradicted testimony of the agent who led the search was that, if members of his team passed into another building, they were unaware of doing so.

**AFFIRMED.**